In re ROXY ROLLER RINK JOINT VENTURE, Judgment Debtor.

TWINS ROLLER CORP., Appellant,

v.

ROXY ROLLER RINK JOINT VENTURE, Respondent.

Nos. 85 Civ. 4073 (JES), 85 Civ. 5488 (JES).

United States District Court, S.D. New York.

Oct. 9, 1986.

Sol V. Slotnik, Sherber, Pomerantz, Slotnik & Hamburg, New York City, for plaintiff (debtor).

George Milman, Baron & Gleich, Great Neck, N.Y., for defendant (appellant).

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

In 85 Civ. 4073, appellant appeals a Memorandum Decision and Order issued by United States Bankruptcy Judge Abram, in *In Re Roxy Roller Rink Joint Venture,* 67 B.R. 474 (Bankr.S.D.N.Y.1985) ("May 3rd Op."). In 85 Civ. 5488, appellant appeals a Memorandum Decision and Order issued by Judge Abram in the same matter on June 4, 1985, 67 B.R. 478. Both appeals raise the identical issue:

> Whether the Bankruptcy Judge erred in holding that Roxy Roller Rink Joint Venture is not a corporation as defined in Section 101(8) of the Bankruptcy Code [11 U.S.C. § 101(8) (1982 & Supp. III 1985)] but a partnership against which an involuntary petition could be filed by one of the co-venturers pursuant to Section 303(b)(3)(A) of the Code [11 U.S.C. § 303(b)(3)(1982 & Supp. III 1985)]?

*See* Appellant's Brief at 1. For the reasons set forth *infra,* the Court answers this question in the negative and affirms both decisions issued by the Bankruptcy Court.

Bankruptcy Code § 303(b) provides in relevant part:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under Chapter 7 or 11 of this title—....
>
> (3) if such person is a partnership—
>
> (A) by fewer than all of the general partners in such partnership....

On October 17, 1984, Natoma Roxy Corp. ("Natoma"), proceeding under § 303(b), filed an involuntary Chapter 11 petition against Roxy Roller Rink Joint Venture ("Roxy"). *See* Chapter 11 Involuntary Pe-

tition in 84 B. 11469 ("Petition").[1] In the involuntary petition, Natoma alleged that it is one of the general partners of Roxy. *See id.* at ¶ 1. Natoma also alleged that the other general partner of Roxy is Twins Roller Corp. ("Twins"). *See id.* at ¶ 2.

In its answer to the involuntary petition, Twins denied that either Natoma or Twins were general partners of Roxy. *See* Answer to Petition at ¶ 2. Moreover, Twins alleged as an affirmative defense to the petition that Roxy "has the attributes of a Corporation as defined under Section 101(8) of the Bankruptcy Code." Therefore, according to Twins, "the filing of the petition by [Natoma] against [Roxy] is not provided for in the Code." *See id.* at ¶ 5.

Natoma moved before the Bankruptcy Court for summary judgment dismissing Twins' affirmative defense. In its Decision and Order dated May 3, 1985, the Bankruptcy Court concluded that Roxy is a "species of partnership," that Natoma is a general partner of Roxy, and that Natoma therefore has standing to file an involuntary petition against Roxy pursuant to § 303(b)(3)(A). *See* May 3rd Op. at 474–75. However, the Bankruptcy Court did not enter an order for relief under Chapter 11 at that time due to an issue of fact with respect to whether Roxy was generally paying its debts as they became due. In its June 4, 1985 opinion the Bankruptcy Court granted a final order for relief under Chapter 11 to Roxy.[2]

■ As noted *supra,* the only issue raised by appellant on these appeals is whether Roxy is a corporation within the meaning of § 101(8) [3] and therefore not subject to the provisions of § 303(b). The

Court agrees with the Bankruptcy Court that the August 24, 1981 agreement between Natoma and Twins, which formed Roxy, clearly establishes that Roxy is a joint venture and not a corporation. *See* May 3rd Op. at 476.

The August 24th agreement expressly states that the parties intend to form a joint venture. According to the agreement, Twins has a 57% ownership interest and Natoma has a 43% interest in the venture. *See* August 24, 1981 Agreement ("Agreement") at ¶ 3. The agreement also provides for minimum capital contributions by each venturer, *see id.* at ¶¶ 9(a), (b), for distributions of earnings in proportion to the venturers' ownership interests after the initial capital contributions are recouped, *see id.* at ¶¶ 10, 11, and for contribution and indemnification between the venturers. *See id.* at ¶ 14. Paragraph 9(c) of the agreement provides that:

> each party shall be liable for, and agrees to pay into the Venture promptly when due, his ownership interest percentage share of all costs and expenses of whatsoever kind or nature incurred by the Venture in connection with its operation of business affairs, to the extent said costs or expenses are not covered by the income and available cash reserves of the Venture....

Significantly, the agreement does not limit either joint venturer's liability to the extent of their capital contribution. Moreover, the agreement provides that its terms are to be construed in accordance with the laws of New York and that the "laws relating to general partnership shall govern this

---

1. An amended involuntary petition was filed by Natoma on October 30, 1984. This amended petition deleted certain allegations which are not relevant to the instant appeals. *See* May 3rd Op. at 474.

2. In a letter to the Court dated August 5, 1985, appellant explained that the appeal in 85 Civ. 5488 of the Bankruptcy Court's June 4, 1985 order was filed because "it was a concern that the [decision and order of the Bankruptcy Court on May 3, 1985] might be deemed to be interlocutory and not appealable." To the extent that the May 3rd decision and order was an interloc-

utory order, the Court grants leave to file the interlocutory appeal in 85 Civ. 4073 *nunc pro tunc.*

3. 11 U.S.C. § 101(8)(A)(i) provides in relevant part that a corporation includes an "association having a power or privilege that a private corporation, but not an individual or a partnership, possesses." It is clear that a corporation does not include general or limited partnerships. *See* 2 Collier on Bankruptcy § 101.08 (15th Ed. 1986).

Venture, unless expressly indicated otherwise herein." *See id.* at § 21(b).

 In determining whether a joint venture exists the Court must consider the intent of the parties, whether there was joint control and management of the business, whether there was a sharing of the profits and the losses, and whether there was a combination of property, skill, or knowledge. *See Ramirez v. Goldberg,* 82 A.D.2d 850, 852, 439 N.Y.S.2d 959, 961 (N.Y.App.Div.1981). The express terms of the joint venture agreement, as described above, clearly establish that Roxy is a joint venture.

 Moreover, a joint venture is generally treated as a partnership and not a corporation, the only significant difference between a joint venture and a partnership being that joint ventures are organized for a limited time and purpose. *See Dogan v. Harbert Construction Corp.,* 507 F.Supp. 254, 258 (S.D.N.Y.1980); *see generally* 16 NY Jur2d, Business Relationships, § 1578, at 254 (1981). Thus, although neither party has raised the issue, it appears that a partnership within the meaning of § 303(b) includes joint ventures.[4] In any event, where, as here, the parties' agreement expressly states that laws relating to general partnerships govern the venture, § 303(b) clearly is applicable.[5]

 Appellant's argument in support of its contention that Roxy is a corporation within the meaning of § 101(8) is as follows: Natoma and Twins are both corporations formed for the sole purpose of entering into the Roxy joint venture. By entering into the joint venture agreement as corporations, appellant asserts that the venturers' shareholders and promoters intended to and succeeded in limiting their personal liability to "whatever capital contributions the individuals wished or agreed to make to their respective corporations to fund the operation of" Roxy. *See* Appellant's Brief at 7. Since the liability of the shareholders of both corporate joint venturers is limited by their capital contribution to the corporations, appellant contends that the joint venture itself must be considered a corporation.

 The Court agrees with the Bankruptcy Court that this argument is unpersuasive. Appellant is incorrect in assuming that the difference between a corporation and a partnership turns solely on whether the participants in the venture have limited personal liability. As noted above, the determination of whether an entity is a partnership (or a joint venture)

---

**4.** Appellant argues, as it did in the Bankruptcy Court, that *In Re York Furniture,* 32 B.R. 211 (Bankr.S.D.N.Y.1983) holds that an involuntary petition against a joint venture can only be filed by a creditor. The Court agrees with the Bankruptcy Court that the *York* case clearly does not stand for that proposition. Indeed, just as it did in the Bankruptcy Court, appellant completely mischaracterizes the facts of the *York* case by stating that the debtor in *York* was a joint venture. The debtor in *York* was one of the joint venturers. Therefore, the issue of whether a joint venturer may file an involuntary petition against the joint venture was never raised in *York.*

**5.** Appellant makes much of the fact that the joint venture agreement provides that the laws relating to general partnerships shall govern, "unless expressly indicated otherwise herein." *See* Agreement at § 21(b). According to appellant, § 21(d) of the agreement expressly indicates that the bankruptcy laws relating to partnerships shall not apply to the joint venture. *See* Appellant's Brief at 9–10. The Court finds no such express indication in § 21(d). § 21(d) of the agreement provides:

> The parties hereto agree that this Agreement is confined to the operation of this Venture, and nothing contained in this Agreement shall be construed to create a general partnership among the parties nor authorize any party to bind the others in any matter not connected with the Venture.

This section simply establishes that the parties have only agreed to a partnership for a limited purpose, that is, a joint venture arrangement. Thus, as the Bankruptcy Court correctly held, the clause merely limits the authority of one venturer to bind the other venturer vis-a-vis third parties beyond the scope of the venture, as might otherwise be possible in a more general type of partnership arrangement. *See* May 3rd Op. *supra* at 476, fn. 4. Nothing in this clause purports, either expressly or impliedly, to limit the applicability of the bankruptcy laws relating to general partnerships.

turns on a variety of factors, only one of which is whether the parties share losses. *See generally Ramirez, supra,* 82 A.D.2d at 852, 439 N.Y.S.2d at 961; *see also M.I.F. Securities Co. v. R.C. Stamm & Co.,* 94 A.D.2d 211, 463 N.Y.S.2d 771 (N.Y.App. Div.), *aff'd* 60 N.Y.2d 936, 471 N.Y.S.2d 84, 459 N.E.2d 193 (N.Y.1983).

 Moreover, assuming *arguendo* that a limitation on the liability of the participants in a joint venture is a crucial factor in determining whether the entity is a partnership or a corporation for the purposes of the Bankruptcy Code, the Court notes that the joint venture agreement does not limit the liability of either joint venturer. The agreement provides that both Twins and Natoma are fully liable for Roxy's debts on a *pro rata* basis. *See* Agreement at ¶ 9(c). Where, as here, any limitation on the liability of the participants in a joint venture flows solely from the corporate status of the joint venturers, the joint venture does not thereby become a corporation. Indeed, the liability of natural persons who form a partnership can never exceed their assets. The situation is no different where its partners are corporations. Thus, as the Bankruptcy Court correctly noted, *see* May 3rd Op. at 477, while a joint venture may not be carried on by individuals through a corporate form, corporations clearly may be parties to a joint venture agreement. *See* NY Jur2d, Business Relationships, § 1580 at 256 (1981).

### CONCLUSION

For the reasons set forth *supra,* the Court concludes that Roxy is not a corporation but instead is a partnership against which an involuntary petition could be filed by Natoma pursuant to § 303(b). Therefore, the Bankruptcy Court decisions of May 3, 1985 and June 4, 1985 are both affirmed.

The Clerk of the Court is hereby directed to close both 85 Civ. 4073 and 85 Civ. 5488 for statistical purposes.

It is SO ORDERED.