**In re Dyana LANDRIN, Debtor.**

**COMMUNITY MUTUAL SAVINGS BANK, Plaintiff,**

v.

**Dyana LANDRIN, Defendant.**

**Bankruptcy No. 93–B–20920.**
**Adv. No. 93–5305A.**

United States Bankruptcy Court,
S.D. New York.

Sept. 15, 1994.

308

Robert J. Hecker & Associates, P.C. by Mark R. Knuckles, White Plains, NY, for Community Mut. Sav. Bank.

L. Monty Kandekore, New York City, for Dyana Landrin.

### DECISION ON OBJECTION TO DISCHARGEABILITY OF JUDGMENT AND RESTITUTION ORDER

JOHN J. CONNELLY, Bankruptcy Judge.

The events which gave rise to this dispute date back to the time when the chapter 7 debtor, Dyana Landrin, was employed as a teller by the plaintiff, Community Mutual Savings Bank ("Bank"). Landrin does not deny that during her employment she took approximately nineteen thousand dollars ($19,000.00) from the Bank. In January, 1993, Landrin was convicted of the crime of Grand Larceny in the Fourth Degree under New York Penal Law Section 155.30 ("the conviction"). The County Court found that Landrin "wrongfully caused specific losses

and financial damages to the Community Mutual Savings Bank" and ordered her to "pay financial restitution ... $13,903.00 to ... Community Mutual Savings Bank ("Restitution Order")."[1] It appears as though no appeal of the conviction or the restitution order was filed.

On May 6, 1993, Landrin filed a petition for relief under Chapter 7 of the Bankruptcy Code. On August 12, 1993, the Bank timely commenced this adversary proceeding seeking to have the debt deemed nondischargeable.[2] On or about December 3, 1993, the debtor filed her answer, in which, she admits that she worked as a teller for the Bank and that she was convicted of larceny as a result of certain things she did while in the employment of the Bank. (Answer ¶ 4 and Affirm. in Supp. of Answer ¶ 2).

The Bank now moves for summary judgment. In short, the Bank contends that as a result of the conviction, Landrin is collaterally estopped from denying that the debt is excepted from discharge under 11 U.S.C. § 523(a)(4) and (6). Landrin opposes the motion for summary judgment and contends that the Restitution Order is a debt that is dischargeable because "a restitution obligation is only non-dischargeable when it is for a governmental unit." (Def.'s Mem. Summ. J. at 3.) For the reasons stated below, the Bank's motion for summary judgment is granted.

### A. MOTION FOR SUMMARY JUDGMENT

 Federal Rule of Civil Procedure 56(c), made applicable here by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

---

1. The judgment and order of restitution was entered by the County Court of the County of Westchester on January 12, 1993 and entered by the office of the County Clerk on January 19, 1993 against Landrin. Apparently, Landrin paid the Bank five thousand dollars for the Restitution Order reflects this deduction. (Am.Compl. ¶ 11).

2. Although the Bank's moving papers and memorandum of law in support of the summary judgment motion caption the motion as one objecting to discharge, the contents of the papers refer only to 11 U.S.C. § 523 which deals with the dischargeability of individual debts.

matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to clearly establish the absence of a genuine issue as to any material fact. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

**B. 11 U.S.C. § 523**

■ Sections 523(a)(4) and (6) of the Bankruptcy Code govern the instant dispute.[3] To succeed under these sections, the Bank must prove by a preponderance of the evidence either that Landrin committed fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny or, alternatively, that Landrin inflicted a willful and malicious injury to the Bank or to the property of the Bank. 11 U.S.C. § 523(a)(4) and (6); *Grogan v. Garner,* 498 U.S. 279, 285, 111 S.Ct. 654, 658–59, 112 L.Ed.2d 755 (1991). In adjudicating dischargeability actions, courts should be mindful that exceptions to discharge must be literally and strictly construed and liberally in favor of the debtor to afford bankruptcy's goal of the economic "fresh start," *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Household Finance Corp. v. Danns (In re Danns),* 558 F.2d 114, 116 (2d Cir. 1977): *Gafni v. Barton (In re Barton),* 465 F.Supp. 918, 921 (S.D.N.Y.1979); *Schwaldbe v. Gans (In re Gans),* 75 B.R. 474, 481–82 (Bankr.S.D.N.Y.1987).

■ The first matter which I need address is Landrin's contention that the debt must be discharged. Essentially, Landrin argues that pursuant to § 523(a)(7), a restitution obligation payable to and for the benefit of an entity other than a governmental unit is *per se* dischargeable. To support this argument, Landrin relies on the Supreme Court's decisions in *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) and *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109

L.Ed.2d 588 (1990). That reliance is misplaced. Not only is this case factually distinguishable from *Robinson,* where no timely objection to discharge was interposed and the question was whether the debt automatically escaped discharge under 523(a)(7), but the text of that decision belies Landrin's argument. *Robinson* instructs, albeit in dicta, that a restitution obligation can be determined to be nondischargeable under § 523(a)(4) where a complaint is timely filed, although governmental agencies can also obtain this relief "automatically" under 523(a)(7). 479 U.S. at 42, n. 3, 107 S.Ct. at 357, n. 3 ("[b]ecause Robinson was convicted of larceny, one of the debts listed in § 523(a)(4), it is quite likely that the Bankruptcy Court, if it had found the obligation to be a 'debt' would have found it nondischargeable under that subsection.") This conclusion clearly undermines the debtor's contention that § 523(a)(7) is the only provision under which restitution obligations can be deemed nondischargeable.

Landrin's reliance on *Davenport* is equally unavailing because in that case the issue was whether a restitution obligation was dischargeable under Chapter 13 of the Code. A cursory review of 11 U.S.C. 1328(a) reveals that Congress crafted a much narrower set of rules on dischargeability of debts in a Chapter 13 case from the rules governing dischargeability in a Chapter 7 case. The result is that a Chapter 13 debtor is offered a broader discharge than is a Chapter 7 debtor. *Davenport,* 495 U.S. at 563, 110 S.Ct. at 2133. Recognizing that the debt in that case did not fall under one of the Chapter 13 exceptions (but was a debt that could be discharged), the Supreme Court affirmed the lower court's decision that the restitution obligation should be discharged. *Id.* Aside from the general holding that a restitution obligation is a debt for dischargeability purposes, *Davenport* is inapplicable because this is a Chapter 7 case.

In sum, neither of these two cases stand for the proposition that restitution orders to non-governmental creditors are *per se* dischargeable. Since restitution obligations can

---

**3.** I would note, the Bank also refers to § 523(a)(11) in its memorandum of law. Since

no mention of § 523(a)(11) was made in the complaint, this issue is not properly before me.

be nondischargeable under other sections of § 523(a) and since neither § 523(a)(4) nor § 523(a)(6) are limited to governmental creditors, I cannot accept Landrin's argument that the Restitution Order is *per se* dischargeable.

■ That said, I turn next to whether the Restitution Order is dischargeable under § 523(a)(4). There are three ways under this provision that a debt can be determined to be nondischargeable. The Bank relies only on the first of the three, i.e. that the Restitution Order is a debt for fraud or defalcation while acting in a fiduciary capacity.[4] In sum, I need not determine whether Landrin is collaterally estopped from challenging that the debt was incurred as a result of fraud or defalcation, since the Bank has failed to establish that Landrin was acting as a fiduciary when she committed the larceny. *See Kuper v. Spar (In re Spar)*, Ch. 7 Case No. 88–B–12665(PBA), Adv. No. 89–5528A, slip op. at 18 (Bankr.S.D.N.Y. Feb. 22, 1994).

■ For purposes of 523(a)(4) the question of who is a fiduciary must be determined under federal law although state law is in actuality relevant to the issue. *Gans*, 75 B.R. at 489. The term "fiduciary" has a much narrower definition than that generally used and applies only to express or technical trusts which are imposed by operation of law. *Spar*, slip op. at 17 (citing *In re Balzano*, 127

B.R. 524, 532 (Bankr.E.D.N.Y.1991)); *Gans*, 75 B.R. at 489; *accord Ohio Co. v. Maynard (In re Maynard)*, 153 B.R. 933 (Bankr. M.D.Fla.1993). Equitable or trusts implied in law do not establish a fiduciary relationship for purposes of § 523(a)(4). *Gans*, 75 B.R. at 489.

Here the bank has failed to establish that a true fiduciary relationship exists by operation of law. Aside from the Bank's bald assertion that "the relationship between [the Bank] and the Debtor was one of 'express trust,'" (Bank's Mem. Supp. Summ. J. at 6) the Bank cites me to no statute or case authority which imposes such a trust. Instead, the Bank supports its contention with alleged factual statements which were not included in the complaint. As I see it, notwithstanding that she routinely came into contact with large sums of money, Landrin and the Bank had a traditional employee employer relationship which relationship is insufficient to rise to the level of a fiduciary for purposes of § 523(a)(4). *See Maynard*, 153 B.R. at 935; *Shearson Lehman Hutton Mortgage Corp. v. Gierman (In re Gierman)*, 106 B.R. 733, 737 (M.D.Fla.1989). (Court found that a bank loan officer is not a fiduciary within the meaning of § 523(a)(4) notwithstanding an employment contract) Accordingly, the Bank cannot prevail on this cause of action.

---

**4.** With a few additional pieces of evidence in the record, the Bank could have moved for summary judgment on the grounds that the Restitution Order results from a larceny conviction. Courts in this jurisdiction have held, where a sufficient record exists, that restitution obligations that arise from larceny convictions are nondischargeable under § 523(a)(4). *See e.g. State of New York v. Sokol (In re Sokol)*, 170 B.R. 556, 560–61 (Bankr.S.D.N.Y.1994); *In re Kelly*, 155 B.R. 75 (Bankr.S.D.N.Y.1993). In *Sokol*, Judge Bernstein thoroughly analyzed the preclusive effect of a state court larceny conviction in a subsequent dischargeability action under § 523(a)(4) and concluded that "larceny is defined by federal common law and requires proof of the debtor's *fraudulent* intent in taking the creditor's property." *Id.* (emphasis supplied) He further recognized that the federal standard is not necessarily met by a state court conviction of larceny since larceny under New York law does not require fraudulent intent in all cases. *Id.* New York Penal Law divides "larceny" into five types, in

which only some include the element of fraudulent intent. ((a) common law larceny (which includes obtaining property by false pretenses) (b) acquiring lost property, (c) issuing a bad check, (d) false promise (pursuant to a scheme to defraud) and (e) extortion.) N.Y. Penal § 155.05(1) (McKinney 1988). Yet, Judge Bernstein granted summary judgment after finding that Sokol's conviction for larceny by false pretenses (a type of larceny which includes the requisite element of an intent to defraud) had collateral estoppel effect in the subsequent dischargeability action under § 523(a)(4). *Sokol*, 170 B.R. at 560–61.

Unlike in *Sokol*, summary judgment is inappropriate here since the record before me does not identify the type of larceny which underlies the conviction and the Restitution Order. Without this information, I am unable to determine whether Landrin's larceny conviction establishes the necessary finding of intent sufficient to satisfy the federal law requirement.

■ Notwithstanding that analysis, summary judgment is appropriate because Landrin's actions constitute willful and malicious conduct within the meaning of 11 U.S.C. § 523(a)(6). To establish the nondischargeability of the debt under this provision, "[the Bank] must show that more likely than not, the harm which resulted from [Landrin's] activities constitutes willful and malicious injury within the meaning of the statute." *In re Fugazy*, 157 B.R. 761, 765 (Bankr.S.D.N.Y.1993) ("In general, courts have held that willful and malicious injury occurs when a wrongful act done intentionally necessarily produces the harm that results.") Specific intent to harm the individual actually injured is not required. *Johnson v. Keller (In re Keller)*, 106 B.R. 639, 643 (Bankr.S.D.N.Y.1989). For purposes of 11 U.S.C. § 523(a)(6), the term willful means that the act was done deliberately or intentionally; the term malicious means that the act was wrongful and without just cause. *Navistar Financial Corp. v. Stelluti*, 167 B.R. 29, 33 (Bankr.S.D.N.Y.1994). Personal hatred, spite or ill will are not necessary to find a willful and malicious injury. *Beneficial Finance Co. of New York, Inc. v. Contento (In re Contento)*, 37 B.R. 853, 856 (Bankr.S.D.N.Y.1984).

In this case, it is abundantly clear that the Bank has met its burden in proving that the debt is nondischargeable under § 523(a)(6). In order to convict Landrin, the County court necessarily had to find that Landrin intended to take the money. Under the New York Penal Law, a person commits "larceny" when he wrongfully takes, obtains, or withholds another's property with intent either to deprive that person of his property or to appropriate it for himself. N.Y. Penal Law § 155.05(1).

■ I find that Landrin is collaterally estopped [5] from relitigating the issues of intent and commission of the act which were necessarily decided by the County Court (under a higher standard of proof than is required in this case) as part of the conviction.[6] *See Grogan* 498 U.S. at 284–85, n. 11, 111 S.Ct. at 657–59, n. 11 (1991); *Robinson*, 479 U.S. at 48 n. 8, 107 S.Ct. at 360; *Brown v. Felsen*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979); *accord In re Guerrerio*, 143 B.R. 605, 610 (Bankr. S.D.N.Y.1992).

Thus, the record establishes that the harm which resulted from Landrin's activities constitutes willful and malicious injury within the meaning of section 523(a)(6). *See Navistar*, 167 B.R. at 33; *In re Fugazy*, 157 B.R. 761, 765. Accordingly, the Bank has met its burden as to the § 523(a)(6) cause of action and I am hereby granting summary judgment in favor of the Bank. The debt to the Bank is non-dischargeable. Settle order consistent with this decision.

---

**5.** The doctrine of collateral estoppel prevents a party from relitigating an issue clearly raised in a prior action and necessarily decided against that party or those with whom the party shares privity. *Conte v. Justice*, 996, F.2d 1398, 1400 (2d Cir.1993). The adjudication of fact in the prior proceeding must have been by a valid and final judgment. *State of New York v. Kelly (In re Kelly)*, 155 B.R. 75, 78 (Bankr.S.D.N.Y.1993) (quoting Restatement (Second) of Judgments § 13 (1980)). The party invoking collateral estoppel has the burden of identifying the precise issues litigated in the prior action and establishing a record sufficient to reveal the controlling facts. *In re Spector*, 22 B.R. 226, 231 (Bankr. N.D.N.Y.1982) (citing *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 (9th Cir.1980)).

Under New York law, the determination of whether collateral estoppel precludes relitigation

of an issue requires the court to pursue a two-tiered line of inquiry. *Long Island Lighting Co. v. IMO Industries, Inc.*, 6 F.3d 876, 885 (2d Cir. 1993); *Conte*, 996 F.2d at 1400; *C.H. Sanders Co. v. BHAP Housing Dev. Fund Co.*, 903 F.2d 114, 121 (2d Cir.1990), *reh'g denied*, 910 F.2d 33 (2d Cir.1990); *Manhattan King David Restaurant, Inc. v. Levine*, 154 B.R. 423, 428 (S.D.N.Y. 1993). First the court must determine whether the issue in the instant action is identical to an issue necessarily decided in the first action and decisive of the present action. Secondly, the court must determine whether the party to be barred has had a full and fair opportunity to contest the prior determination.

**6.** This finding is made, notwithstanding the fact that I would be unable to conclude as part of this motion that Landrin's intent was fraudulent for purposes of § 523(a)(4) *See* Infra note 4.